UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                     :

CLARENCE MCGANN,

                                                    12 Civ. 5746 (PAE)

                          Plaintiff,

                                                   OPINION AND ORDER

          -v-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION,

                        Defendants.
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Clarence McGann brings this action against the City of New York ("the City")[1] pursuant to 42 U.S.C. § 1983, claiming that the City violated his substantive and procedural due process rights. The City moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). That motion is granted.

---

[1] McGann also names the New York City Department of Correction ("DOC") as a defendant. As McGann now concedes, Pl. Br. 21 n.2, the DOC is not a suable entity. *See* N.Y. City Charter Ch. 17 § 296; *Rivera v. Bloomberg*, No. 11 Civ. 629 (PGG), 2012 WL 3655830, at *11 (S.D.N.Y. Aug. 27, 2012).

**I.     Background**

   **A.  Factual Background**[2]

McGann was hired by the New York City Department of Correction ("DOC") in 1984. Compl. ¶ 10.  He worked as a correctional officer at Rikers Island for nearly 25 years.  *Id.* ¶ 3. Although McGann's long career was largely successful—he attained the rank of Captain in 1993 and earned several plaudits along the way, *id.* ¶ 11—two incidents towards the end of his career allegedly resulted in his forced retirement.  In this lawsuit, McGann claims that his rights were violated in connection with both incidents.

The first incident involves disciplinary charges brought against McGann in May 2008. Correctional officers are apparently permitted to purchase and carry firearms when off-duty, but they must obtain permission from the DOC to carry a "personal protection" firearm.  *Id.* ¶ 12.  In June 2006, McGann purchased a firearm, intending to give it to a fellow officer as a retirement gift.  *Id.* ¶ 13.  However, the intended recipient moved away before McGann could deliver the

---

[2] The Court's account of the underlying facts is drawn from the Complaint (Dkt. 1), and the three exhibits attached to the Declaration of Leah Schmelzer in Support of Defendants' Motion to Dismiss ("Schmelzer Decl.") (Dkt. 9), which are:  (1) a copy of the disciplinary charges filed against McGann that give rise, in part, to his claim, and McGann's plea agreement admitting to those charges, *id.* Ex. A; (2) a copy of the judgment of McGann's criminal conviction on the charges for which he was (allegedly unconstitutionally) arrested, *id.* Ex. B; and (3) a copy of the notice McGann gave the DOC regarding his (allegedly coerced) resignation, *id.* Ex. C.  The Court may consider these documents on this motion.  *See Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (court may consider "matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit" (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))); *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (court may rely on a document not incorporated by reference in the complaint, where the complaint "relies heavily upon its terms and effect thereby rendering the document integral to the complaint" and where "no dispute exists regarding the authenticity or accuracy of the document" (citations omitted)); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808– 09 (2d Cir. 1996) (permissible to consider full text of documents partially quoted in complaint). McGann does not dispute the propriety of considering these documents on this motion.  Indeed, he explicitly cites one of them in his brief.  *See, e.g.*, Pl. Br. 20 (citing Schmelzer Decl. Ex. C).

gift, so McGann decided to keep it for himself. *Id.* ¶ 14. McGann placed the firearm in storage, not intending to use it for "personal protection." *Id.* ¶ 15.

By March 2008, McGann could no longer recall where he had stored the firearm, and he therefore filed a missing property report with the NYPD. *Id.* However, the same day he filed the missing property report, McGann alleged, his memory was suddenly refreshed: He located the firearm, returned it to the pistol range where he had purchased it, and called the NYPD to report that he had located the firearm. *Id.* ¶ 16. The NYPD allegedly ignored McGann's call reporting the firearm found, and instead notified the DOC that McGann's firearm was missing. *Id.* ¶ 17. In April 2008, Darleen Merit, the Deputy Warden of Security at Rikers Island, called McGann to inform him that the DOC would have to confiscate his off-duty firearms. *Id.* ¶ 18. On May 5, 2008, Merit confiscated McGann's two off-duty pistols. *Id.* ¶ 19. Merit allegedly provided little explanation for the confiscation. *Id.* ¶¶ 21–23.

On May 29, 2008, the DOC served McGann with two disciplinary charges resulting from the lost firearm incident: (1) "conduct unbecoming a member of service in that he purchased a personal protection firearm without obtaining authorization from the [DOC] to purchase said firearm" and (2) "conduct unbecoming a member of service, in that he failed to notify his command that he had lost the firearm and subsequently failed to notify his command that he had recovered the firearm." *Id.* ¶ 24; *see also* Schmelzer Decl. Ex. A, at 2. McGann alleges that he "refused to sign the charges because he did not purchase the aforementioned firearm for personal protection." Compl. ¶ 25. But this does not tell the whole story: On September 24, 2008, McGann entered into a negotiated plea agreement to settle the disciplinary charges against him. Schmelzer Decl. Ex. A, at 1. The plea agreement reads: "Captain Clarence McGann, in full satisfaction of charges . . . accepts the penalty of loss of 25 vacation days." *Id.* The DOC,

3

however, did add an amendment to the language of the charges to remove the words "personal protection." *Id.*

McGann alleges that these charges against him also deprived him of the ability to protect himself while off-duty. Because McGann lives in an area of Staten Island known for criminal activity and inhabited by many former inmates of Rikers Island, he alleges that he was in dire need of an off-duty firearm to protect himself. Compl. ¶¶ 28–33. Thus, when the DOC confiscated McGann's firearms "for no apparent reason whatsoever," it allegedly "put [McGann's] life in danger." *Id.* ¶ 34.

The second incident involves McGann's April 2009 arrest and the suspension that resulted from it. On April 22, 2009, Captain Vincent Valerio, acting on behalf of the Department of Investigation for the New York City Housing Authority,[3] called McGann and "lured" him to work. Valerio did so, McGann alleges, by telling McGann that he was needed to participate in an investigation for which he would be paid overtime. *Id.* ¶¶ 35–36. When McGann arrived at work, however, he was arrested by Captain Valerio and brought to a police station in Staten Island. *Id.* ¶¶ 3, 36. McGann does not state what the basis was for that arrest. Thereafter, McGann alleges, he was suspended by the DOC for 30 days; his badge and identification card were confiscated and never returned; and he was not permitted to return to work. *Id.* ¶ 37. As a result, McGann alleges, on July 30, 2009, he "had no choice but to involuntarily retire." *Id.* ¶ 38.

---

[3] Although the Complaint does not specify this, the Court notes that the City of New York Department of Investigation ("DOI") is a law-enforcement agency—an "independent and nonpartisan watchdog for City government," charged with "investigating and referring for criminal prosecution cases of fraud, corruption and unethical conduct by City employees." *See* City of New York Department of Investigation, Mission Statement, available at http://www.nyc.gov/html/doi/html/about/mission.shtml, last visited March 17, 2013.

McGann alleges that he was never afforded a hearing by the DOC prior to or following his arrest, suspension, and discharge. *Id.* ¶ 39.

McGann's pleadings omit two critical facts regarding these events. First, although the Complaint refers to July 30, 2009 as the date of McGann's forced resignation, it neglects to mention that two months earlier, on May 25, 2009, McGann had submitted a formal notice of his intent to retire from the DOC. Schmelzer Decl. Ex. C. The notice specified that McGann's last date worked would be May 25, 2009, and that his last date paid would be July 30, 2009. *Id.* Second, the Complaint omits the fact that, as to the offense for which McGann was arrested on April 22, 2009, McGann was later tried, and, on April 28, 2010, he was convicted in New York state court. Schmelzer Decl. Ex. B. The offense was second degree grand larceny. On June 8, 2010, McGann was sentenced to a term of five years probation and to pay $72,641 in restitution. *Id.*

### B. Procedural History

On July 26, 2012, McGann filed the Complaint. Dkt. 1. On February 5, 2013, the City filed a motion to dismiss, Dkt. 8, a brief in support of that motion, Dkt. 10 ("Def. Br."), and the Schmelzer Declaration, Dkt. 9, the latter of which attached the materials cited herein relating to McGann's September 24, 2008 plea agreement with the DOC, the July 22, 2010 certificate of disposition reflecting the judgment that issued after his trial and sentencing on the grand larceny charges, and his May 25, 2009 notice of retirement. On February 26, 2013, McGann filed a brief in opposition to the City's motion. Dkt. 13. ("Pl. Br."). On March 5, 2013, the City filed a reply brief. Dkt. 14 ("Def. Reply Br.").

## II.     Applicable Legal Standard

In resolving a motion to dismiss, the Court must "construe the Complaint liberally, accepting all factual allegations in the Complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." *Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012). Nevertheless, the "[f]actual allegations must be enough to raise a right of relief above the speculative level," and the complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [plaintiff's claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Put differently, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

## III.    Discussion

McGann claims that the City and its employees violated his substantive and procedural due process rights. Although the Complaint is not pellucid as to this point, *see* Compl. ¶ 40, it appears that McGann's substantive due process claim arises out of his April 22, 2009 arrest, *see*

6

Pl. Br. 10–11, and that his procedural due process claim arises out of his alleged constructive discharge, which McGann posits resulted from the "intolerable" working atmosphere created for McGann by the adverse events described above, *see* Pl. Br. 12–13. The Court addresses these claims in turn. It then proceeds to determine whether McGann has alleged sufficient facts to support his claim of municipal liability. First, however, the Court addresses the threshold issue of whether McGann's Complaint is timely.

### A. Timeliness

The statute of limitations for claims brought under section 1983 incorporates state law. *See Owens v. Okure*, 488 U.S. 235, 249–50 (1988). Accordingly, the three-year period for unspecified personal injury actions under New York state law applies in this case. *See* N.Y. C.P.L.R. § 214(5); *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). "A Section 1983 claim ordinarily 'accrues when the plaintiff knows or has reason to know of the harm.'" *Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)). McGann filed this Complaint on July 26, 2012. For his claims to be timely, McGann must not have known or had reason to know of the alleged harm before July 27, 2009.

McGann's substantive due process claim arises out of his April 22, 2009 arrest. *See* Pl. Br. 10–11. The harm of which he now complains was well-known to McGann by July 27, 2009. This claim is therefore untimely.

McGann's procedural due process claim is also untimely. McGann bases this claim on the theory that "his forced retirement constitutes a constructive discharge, and that Defendants failure [sic] to afford Plaintiff a hearing prior to, or following the discharge constitutes a violation of his constitutional due process rights." Pl. Br. 14 (citing Compl. ¶ 39). The Second Circuit has clearly stated that a constructive discharge claim accrues on "the date [the employee

gives] definite notice of [his] intention to retire, and the rule should be the same in all cases of constructive discharge." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138 (2d Cir. 2000); *see also Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998) (same).

Here, McGann demonstrably gave notice of his intention to retire on May 25, 2009, as reflected in his retirement letter of that date. Schmelzer Decl. Ex. C. McGann argues that because he could have rescinded the notice any time before July 30, 2009, his claim did not accrue until that date. But that is wrong: "Whether or not Plaintiff had the option of changing his mind about retiring . . . is irrelevant. The inquiry of legal significance is whether and when the Plaintiff communicated an intent to retire." *Shih v. City of N.Y.*, No. 03 Civ. 8279 (LAP), 2006 WL 2789986, at *6 (S.D.N.Y. Sept. 28, 2006) (citing *Flaherty*, 235 F.3d at 138). McGann communicated his intent to retire on May 25, 2009, more than three years before he filed his Complaint. Therefore, McGann's procedural due process claim is also untimely.[4]

McGann tries to avoid this conclusion by invoking the "continuing violation" doctrine, which provides an "exception to the normal knew-or-should-have-known accrual date of a discrimination claim when there is evidence of an ongoing discriminatory policy or practice." *Harris v. City of N.Y.*, 186 F.3d 243, 248 (2d Cir. 1999) (citation omitted). Where the doctrine applies, it "delay[s] the commencement of the statute of limitations period until the last discriminatory act in furtherance of [the discriminatory policy]." *Id.* (citation omitted). This doctrine is "heavily disfavored in the Second Circuit and courts have been loath to apply it

---

[4] *Carmellino v. District 20 of N.Y.C. Bd. of Educ.*, No. 03 Civ. 5942 (PKC), 2004 WL 736988 (S.D.N.Y. Apr. 6, 2004), is inapposite. There, the plaintiff signed a stipulation of her intent to resign effective October 16, 2001, *if* certain conditions were met. However, the Court found that a factual dispute existed as to whether the conditions of the stipulation had in fact been met, and thus whether the stipulation was an effective communication of plaintiff's intent to resign. *Id.* at *14–15. That is not the case here—there is no allegation that McGann's notice of intent to resign was conditional.

absent a showing of compelling circumstances." *Flores v. N.Y.C. Human Res. Admin.*, No. 10 Civ. 2407 (RJH), 2011 WL 3611340, at *2 (S.D.N.Y. Aug. 16, 2011) (citation omitted).

The Supreme Court has held, in the context of Title VII employment discrimination claims, that the continuing violation doctrine does not apply to claims arising from discrete discriminatory acts. *See Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 109–16 (2002). To be sure, *Morgan* declined to apply this rule to Title VII "pattern-or-practice" claims, *see id.* at 115 n.9, and, since *Morgan*, courts in this circuit have held that the continuing violation doctrine applies, too, where plaintiff makes claims under § 1983 of an ongoing policy or custom of violating the Constitution. *See, e.g.*, *Remigio v. Kelly*, No. 04 Civ. 1877 (JGK)(MHD), 2005 WL 1950138, at *7 (S.D.N.Y. Aug. 12, 2005); *Velez v. Reynolds*, 325 F. Supp. 2d 293, 312 (S.D.N.Y. 2004); *Branch v. Guilderland Cent. Sch. Dist.*, 239 F. Supp. 2d 242, 253 (N.D.N.Y. 2003); *cf. Shomo*, 579 F.3d at 182 (continuing violation can apply to Eighth Amendment deliberate indifference claim).

For several reasons, the continuing violation doctrine does not rescue McGann's claims. "To assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege both the existence of an ongoing policy . . . and some non-time-barred acts taken in the furtherance of that policy.'" *Id.* (quoting *Harris*, 186 F.3d at 250). As discussed in more detail *infra*, McGann has not sufficiently alleged the existence of an ongoing *policy* of constitutional violations. But even if he had, he has not alleged any non-time-barred acts taken in furtherance of that policy: *None* of the acts giving rise to McGann's procedural due process claim occurred after July 26, 2009. The disciplinary charges relating to the lost firearm were brought in May 2008. McGann was arrested and suspended in April 2009. And he tendered his notice of resignation on May 25, 2009. Thus, the only act that occurred within the statute of limitations is

9

the City's alleged failure to give McGann a sufficient hearing *after* his retirement became effective on July 30, 2009.  But McGann cannot complain of a lack of process extended to him after his resignation.  That is because "where the alleged illegality is the employer's failure to afford the employee legally required procedural protections, and the employee voluntarily resigns before being discharged, the resignation effectively deprives the employer of the opportunity to comply with the procedural obligations and forecloses the employee from seeking the protections of her previous rights as an employee."  *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) (citations and alterations omitted).  Put differently, McGann cannot prolong the limitations period by resigning (thereby depriving the City of the authority to conduct a hearing regarding his discharge), and then claiming that the City's failure to hold such a hearing was an ongoing violation of his rights.[5]

McGann's procedural due process claim accrued when he tendered his notice of resignation on May 25, 2009, more than three years before the filing of the Complaint.  *See Flaherty*, 235 F.3d at 138.  It is untimely.

---

[5] *Remigio* does not require a contrary result.  In that case, the plaintiff's vehicle was impounded, and he brought a procedural due process claim based on defendants' failure to provide him with a post-deprivation hearing.  *Remigio*, 2005 WL 1950138, at *10.  The court applied the continuing violation exception to plaintiff's claim, finding that each day the defendants failed to hold a hearing was another instance of unlawful conduct, which was "part of a continuous injury that was not simply a consequence of the [seizure of plantiff's car]."  *Id.*  But in *Remigio*, defendants could have held a post-deprivation hearing on the validity of the vehicle's continued retention and thereby remedied the deprivation.  Here, by contrast, McGann "short circuited the process by tendering [his] resignation.  Once [he] did so and was no longer an employee, [defendant] had neither authority nor reason to conduct a hearing on [his] discharge."  *Finley*, 79 F.3d at 1296.

### B. The Merits

McGann's Complaint is also deficient on the merits: McGann has neither stated a plausible violation of his substantive or procedural due process rights, nor pled facts sufficient to state a claim of municipal liability for such a violation.

#### 1. Substantive Due Process

"For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). "While the measure of what is conscience shocking is no calibrated yard stick," *Lewis*, 523 U.S. at 847, the Second Circuit has stated that "malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience" because "[s]uch acts by their very nature offend our fundamental democratic notions of fair play, ordered liberty and human decency." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001).

Here, McGann alleges that his April 22, 2009 arrest "constituted conduct and behavior that was arbitrary, irrational, and conscience shocking, and without regard for [his] constitutional rights." Compl. ¶ 36. To the extent McGann's claim of an alleged disregard for constitutional rights implies that probable cause was lacking for his arrest, McGann's subsequent conviction on the charge for which he was arrested precludes such a claim. *Cameron v. Fogarty*, 806 F.2d 380, 388–89 (2d Cir. 1986), *cert. denied*, 481 U.S. 1016 (1987).

Moreover, McGann's claim of governmental conduct that shocks the conscience is deficient for other reasons. McGann alleges that he was arrested by Captain Vincent Valerio,

who was "acting on behalf of the Department of Investigation for the New York City Housing Authority." Compl. ¶ 36.  It is unclear whether McGann means to say that Captain Valerio worked for the DOI, or that he was a DOC employee who had been deputized by the DOI for the purpose of arresting McGann.  *See id.* ¶¶ 3, 35–36.  Either way, McGann fails to state a claim. A public employer's conduct constitutes a due process violation "only when a governmental employer abuses some power unique to its role as a governmental entity." *Spencer v. City of N.Y.*, No. 06 Civ. 2852 (KMW), 2007 WL 1573871, at *2 (S.D.N.Y. May 30, 2007) (citation omitted); *see also McClary v. O'Hare*, 786 F.2d 83, 89 (2d Cir. 1986) ("We do not think that improper actions taken by employers violate an employee's substantive due process rights simply because that employer is a government official.").  McGann offers no factual basis for his suggestion that the DOI abused its authority in arresting, or helping to arrest, him for the charge (grand larceny) on which he would later be convicted.  *See Cameron*, 806 F.2d at 388–89.  Nor, on the facts as pled, did any DOC employee who may have assisted the DOI to effect that lawful arrest thereby violate McGann's substantive due process rights.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992) ("[T]he [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered [sic] area are scarce and open-ended."); *cf. Lombardi v. Whitman*, 485 F.3d 73, 80 (2d Cir. 2007) (describing "state created danger" case law, wherein the Second Circuit has found substantive due process liability in instances where "a third-party's *criminal behavior* harmed the plaintiff after a government actor—always a law enforcement officer—enhanced or created the opportunity for the criminal act through some interaction or relationship with the wrongdoer" (emphasis added)).

  McGann has, therefore, failed a state a substantive due process claim.

### 2. Procedural Due Process

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012); *see also Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011).

The parties agree that McGann had a property interest in his continued employment with the DOC.[6] *See* Pl. Br. 14; Def. Br. 10; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985); *Otero v. Bridgeport Hous. Auth.*, 297 F.3d 142, 151 (2d Cir. 2002) ("public employee who has a right not to be fired without 'just cause' . . . has a property interest in [his] employment that qualifies for the protections of procedural due process" (citation omitted)). But the parties part ways as to whether McGann was deprived of that property interest without due process. McGann argues that the events described herein constituted a constructive discharge, and that his due process rights were denied when he did not receive a hearing by the DOC prior to or after his resignation. Compl. ¶ 39; Pl. Br. 14. McGann's claim fails for two independent reasons.

First, McGann has not pled a plausible claim of constructive discharge. To establish a constructive discharge, a "plaintiff must demonstrate that his employer acted deliberately to 'make his working conditions so intolerable that he is forced into an involuntary resignation.'" *Linden v. Sherman*, 79 F. App'x 458, 459 (2d Cir. 2003) (summary order) (alterations omitted) (quoting *Lopez v. S.B. Thomas*, 831 F.2d 1184, 1188 (2d Cir. 1987)); *see also Miller v. Batesville*

---

[6] The Complaint actually refers to McGann's loss of employment as a deprivation of his "*liberty* interest." *See* Compl. ¶ 39 (emphasis added). McGann's subsequent briefing, however, makes clear that his claim is based on an alleged deprivation of a *property* interest.

*Casket Co.*, 312 F. App'x 404, 406 (2d Cir. 2009) (summary order) (citation omitted).  Thus, the operative question is whether "a reasonable person in the [plaintiff's] shoes would have felt compelled to resign."  *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 361 (2d Cir. 1993) (citation omitted).  Although McGann is correct that this is a question typically unsuited for resolution as a matter of law, *see Minetos v. City Univ. of N.Y.*, 875 F. Supp. 1046, 1052 (S.D.N.Y. 1995), where the facts alleged are insufficient to permit a rational trier of fact to make such a finding, "a claim of constructive discharge should be dismissed as a matter of law."  *Spence v. Md. Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993) (citation omitted); *see also Arroyo v. WestLB Admin., Inc.*, 213 F.3d 625 (2d Cir. 2000) (summary order) (affirming grant of summary judgment where plaintiff's "allegations were insufficient to raise a triable issue of constructive discharge").

McGann alleges that he had no choice but to resign because he had been "(1) stripped of his personal firearm . . . ; (2) issued disciplinary charges without sufficient basis; (3) detained and effectively arrested by his own employer . . . ; (4) suspended; and (5) stripped of his badge, shield and work identification card."  Pl. Br. 12–13.  But McGann's first two grievances were the result of his own misconduct, for which he accepted disciplinary sanctions.  *See* Schmelzer Decl. A.[7]  And the latter three grievances were the direct result of McGann's criminal activity, for

---

[7] To the extent McGann claims that the confiscation of his off-duty firearm(s), as opposed to his loss of employment, was unrelated to his own misconduct, this still would not state a procedural due process claim.  *See Boss v. Kelly*, 306 F. App'x 649, 650 (2d Cir. 2009) (summary order) (police officer has no property interest in carrying a gun, because under New York law, "possession of a handgun license is a privilege, not a right"); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."); *Ramos v. N.Y.C. Dep't of Corr.*, No. 05-CV-223 (JFB)(LB), 2006 WL 1120631, at *8 (E.D.N.Y. Apr. 26, 2006) (DOC officer does not have a right to possess DOC firearms qualification).  As the Complaint itself makes clear, McGann had the privilege, not the right, to possess an off-duty personal protection firearm.  Compl. ¶ 12 (although an "officer's shield and identification badge constitute a pistol permit or pistol license,

which he was later convicted of grand larceny in the second degree. *See* Schmelzer Decl. Ex. B; *see also* N.Y. Civ. Serv. Law § 75(3) (authorizing 30-day suspension without pay while disciplinary charges are pending). Thus, the facts alleged—as supplemented by the documents fairly considered on this motion—reflect that McGann resigned as a result of his own misconduct. Such allegations do not state a claim of constructive discharge. *See Carmellino v. District 20 of N.Y.C. Bd. of Educ.*, No. 03 Civ. 5942 (PKC), 2006 WL 2583019, at *4 (S.D.N.Y. Sept. 6, 2006) ("[A]n employee is not constructively discharged when he or she resigns rather than respond to disciplinary charges."); *Bailey v. N.Y.C. Bd. of Educ.*, 536 F. Supp. 2d 259, 266 (E.D.N.Y. 2007) ("[W]hen an employee resigns rather than respond to disciplinary charges, the resignation cannot later be construed as a constructive discharge.").[8]

Second, even assuming the dubious proposition that McGann was constructively discharged, he was not denied due process. If he had wished to challenge his resignation as coerced, McGann could have instituted an Article 78 proceeding in New York state court. *See* N.Y. C.P.L.R. §§ 7801 *et seq.* "Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity." *Giglio v. Dunn*, 732 F.2d 1133,

---

. . . [a] correctional officer does . . . need to obtain permission to purchase and carry a personal protection firearm from the [DOC]").

[8] As the Second Circuit has noted, resignation in the face of potential disciplinary charges "is a much-used, face-saving device designed to avoid the stigma of being fired." *See Giglio v. Dunn*, 732 F.2d 1133, 1134 (2d Cir. 1984). McGann's resignation may have served to avoid both this stigma, and any other adverse consequences of potential disciplinary action following from a criminal conviction. *See, e.g.*, New York City Ch. § 1116(a) (public employee forfeits his employment upon conviction for fraud, neglect of duty, or willful violation of law relative to office); New York Pub. Officer's Law § 30(1)(e) (employee's public office deemed vacant upon his conviction of a felony, or a crime involving a violation of his oath of office).

1135 (2d Cir. 1984); *see also Hellenic Am. Neighborhood Action Comm. v. City of N.Y.* ("*HANAC*"), 101 F.3d 877, 881 (2d Cir. 1996) ("An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit."). In *Giglio*, a teacher claimed that he was coerced to resign by his superiors, and argued that he was denied due process when no hearing was conducted prior to his resignation. The Second Circuit rejected his claim, finding that because a pre-deprivation hearing would have been impractical, and plaintiff's right to a post-deprivation Article 78 hearing was meaningful, "the State satisfie[d] its constitutional obligations by providing the latter." *Giglio*, 732 F.2d at 1135. Here, a pre-deprivation hearing was similarly impractical, because "[w]hen an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance." *Id.*; *cf. Finley*, 79 F.3d at 1296 (plaintiff who resigns before employer takes all the steps necessary to fire her cannot complain of procedural due process violation because "the resignation effectively deprives the employer of the opportunity to comply with the procedural obligations").[9] And McGann's post-deprivation Article 78 rights were meaningful. *See id.*; *HANAC*, 101 F.3d at 881. McGann, however, failed to avail himself of them. Thus, McGann was not denied due process.

---

[9] As McGann correctly notes, "the availability of postdeprivation procedures will not, ipso facto, satisfy due process" when a deprivation occurs pursuant to "established state procedures" rather than "random, unauthorized acts by state employees." *HANAC*, 101 F.3d at 880. That is because a pre-deprivation hearing is not "impractical" in a structured, *i.e.*, non-random, context. *Id.* Thus, "the 'random and unauthorized' exception to the requirement of a pre-deprivation hearing does not apply where the government actor in question is a high-ranking official with 'final authority over significant matters.'" *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d. Cir 2003). But McGann has offered nothing more than conclusory, speculative allegations that high-ranking officials were involved in the alleged deprivations. *See* Compl. ¶ 40(c) ("Policymakers engaged in and/or tacitly condoned the deprivations."); Pl. Br. 16 ("[T]he involvement of high-ranking officials is certainly plausible, if not likely.").

### 3. Municipal Liability

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (citation omitted); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The custom or policy requirement may be satisfied in one of four ways:

> The plaintiff may allege the existence of (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Bennerson v. City of N.Y.*, No. 03 Civ. 10182 (RWS), 2004 WL 902166, at *4 (S.D.N.Y. Apr. 28, 2004) (internal citations omitted).

Where, as here, a plaintiff has failed to state a violation of his constitutional rights by any municipal employee, the City cannot be held liable. *See Matican v. City of N.Y.*, 524 F.3d 151, 154 (2d Cir. 2008) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). But, even assuming that McGann's rights had been violated in some way by a City employee, McGann has failed to allege facts sufficient to show that such a violation was caused by a municipal policy or custom. Rather, McGann's allegations in this regard consist of a boilerplate recitation of three of the four ways of establishing such a policy, unadorned by any factual allegations that would tend to support these theories. *See* Compl. ¶ 40. Moreover, the alleged municipal policy is that the City had a "custom or practice of depriving Plaintiff of [due process] rights." *Id.* ¶ 40(a). That

is, it was not the City's policy to violate the substantive and/or procedural due process rights of its employees by any specific practice, or even to demonstrate a deliberate indifference to the rights of City employees generally. Rather, it was allegedly the City of New York's policy to violate the constitutional rights of Clarence McGann, and only Clarence McGann. This allegation is as implausible as it is conclusory.[10] *See Siino v. Crown House Realty Co., LLC*, No. 12-CV-1905 (MKB)(VVP), 2012 WL 1450411, at *3 (E.D.N.Y. Apr. 25, 2012) (dismissing claim that City had a policy of violating plaintiff's rights). Therefore, McGann's section 1983 claim against the City must be dismissed.

---

[10] The Court notes that there has been some disagreement among district courts about whether the *Twombly* pleading standard applies to *Monell* claims, or whether the more lenient standard, set forth by the Second Circuit in *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004), continues to apply post-*Twombly*. *Compare Castilla v. City of N.Y.*, No. 09 Civ. 5446 (SHS), 2012 WL 3871517, at *4 (S.D.N.Y. Sept. 6, 2012) (applying *Amnesty* standard to failure to train claim), *with Triano v. Town of Harrison*, No. 09 Civ. 6319 (KMK), 2012 WL 4474163, at *11 (S.D.N.Y. Sept. 26, 2012) (applying *Twombly*, because *Amnesty* is "difficult to reconcile with *Twombly*'s subsequent pronouncement"). However, the Second Circuit appears to have recently clarified the issue: "While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, *see* [*Amnesty*], this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." *Simms v. City of N.Y.*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) (summary order) (affirming district court decision applying *Twombly*); *see also Missel v. Cnty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order) (citing *Iqbal* in affirming dismissal of *Monell* claim). In any event, McGann's pleading fails to state a claim under any standard. *See Toliver v. City of N.Y.*, No. 10 Civ. 5806 (SHS)(JCF), 2012 WL 6849720, at *7–8 (S.D.N.Y. Sept. 25, 2012) (Report & Rec.), *adopted in full by* 2013 WL 146088 (S.D.N.Y. Jan. 14, 2013) (recognizing dispute regarding applicable standard, but finding that similar conclusory allegations fail even the reduced pleading standard).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. The Clerk of Court is directed to terminate the motion pending at docket number 8, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 26, 2013
    New York, New York